## Minneapolis Threshing Machine Co. v. George Higgins.

1. SALES—*A Contract of Sale Construed Not to Warrant Goods Sold to be Merchantable.*—A contract called for "one hundred cords of good second-growth oak wood, dry, to be delivered in Rockford during the month of October, 1895, at $4.50 per cord." In a suit by the vendee to recover for a breach of the contract, the court discusses the circumstances of the case, and holds that the contract, construed in the light of the acts of the vendee's agents, did not mean and was not intended to mean that the wood should be merchantable in Rockford.

2. CONTRACTS—*A Contract Construed.*—The court holds that the contract mentioned in note one did not mean that the vendor was to deliver wood worth $4.50 per cord, but that wood filling the description given was to be received by the vendee at $4.50 per cord, as payment upon the debt in said contract described.

Assumpsit, on a contract of sale. Appeal from the Circuit Court of Winnebago County; the Hon. J. C. GARVER, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed September 20, 1897.

FISHER & NORTH, attorneys for appellant.

In the sale of personal property, if upon arrival at the place of delivery the goods are found to be unmerchantable, in whole or in part, the vendee has the option to reject them, or receive them and rely upon the warranty. English v. Spokane Com. Co., 57 Fed. Rep. 456.

The goods sold must conform to the terms of the warranty at the place of delivery. Sedgwick on Damages, 8th Ed., Sec. 771; Bridge v. Wain, 1 Stark. 504; Addison on Contracts, Vol. 1, Sec. 240.

The goods delivered must correspond with the goods purchased at the time and place of delivery. Crabtree v. Kile, 21 Ill. 185; Story on Sales, Sec. 454.

By the great weight of authority it is now well settled that if the goods upon arrival at the place of delivery are

found unmerchantable in whole or in part, the vendee has the option either to reject them or receive them and rely upon the warranty.    English v. Spokane Com. Co., 57 Fed. Rep. 456; 2 Schouler, Personal Property, Secs. 581–583; 2 Benjamin on Sales, Sec. 997 and note 29; 2 Benjamin on Sales, Secs. 1353 to 1356; Babcock v. Trice, 18 Ill. 420.

In cases of executory contracts, or contracts to deliver a specific article, if, on delivery, they prove not to satisfy the agreement, the plaintiff, as we have seen, is not bound to retain the articles, but he may return them within a reasonable time, and, if paid for, recover back the price paid. Sedgwick on Damages, 8th Ed., Sec. 759; Diversy v. Kellogg, 44 Ill. 119; Clark on Contracts, 671; Pope v. Allis, 115 U. S. 363; 5 Field's Lawyers' Briefs, Sec. 347.

Under the contract declared upon, plaintiff agreed and was bound to deliver wood that was good in the city of Rockford, and wood that was reasonably merchantable. This was an executory contract.    Foos et al. v. Sabin, 84 Ill. 564; Babcock v. Trice, 18 Ill. 420; Misner v. Granger, 4 Gil. 69; Fish et al. v. Roseberry, 22 Ill. 299; Doane et al. v. Dunham, 65 Ill. 516; 5 Field's Lawyers' Briefs, Sec. 290.

In the case at bar the proof shows that the defendant had over 200 cords of wood in his clearing.

Knowing that he contracted to deliver good wood to the plaintiff in the city of Rockford, he could easily have performed his contract by throwing out and retaining for his own use, or other disposal, the small and crooked wood and delivering only the good wood, and such wood as was reasonably merchantable to plaintiff in Rockford.    Here was an express warranty that it should be good wood in the city of Rockford.    5 Wait's Actions and Defenses, 555; 5 Field's Lawyers' Briefs, Secs. 287, 290 and 347.

FRANK S. REGAN and A. D. EARLY, attorneys for appellee.

The rule most conspicuous and wide reaching of all is that a written contract shall be so interpreted as, if possible, to carry out what the parties meant.    Bishop on Contracts, Sec. 380.

It is a question for the jury whether the thing delivered

be what was really intended by both parties as the subject-matter of the sale, although not very accurately described. 2 Benjamin on Sales (4th Ed.), Sec. 927.

Where a known, described and defined article is ordered by a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, defined and described thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. 2 Benjamin on Sales (4th Ed.), Sec. 987.

Mr. Justice Dibell delivered the opinion of the Court.

Appellant sold appellee certain farm machinery for $1,900. There was a written contract, of which two copies were executed, one for each party. These were not exactly alike in reference to the matter here litigated. During the trial the parties agreed Exhibit " D " should be treated as the contract. It showed appellee, in payment for said machinery, was to deliver to appellant certain securities therein described, and " one hundred cords of good second-growth oak wood, dry, to be delivered in Rockford during the month of October, 1895, at $4.50 per cord." Appellee lived two and a half miles from Davis Junction, and some fourteen miles or more from Rockford, and in another county. Appellant had several agents who acted in its behalf in the matter here involved. Hadley was general agent for Northern Illinois, with headquarters at Peoria; Harvey was agent at Rockford, and Borden at Davis Junction. When the time for delivering the wood arrived, appellee was ready to deliver and so notified Hadley, who was then at appellee's farm. Hadley said it was too warm to sell the wood then, and the company had no place to store it, and did not wish to pay storage on it, and asked appellee to deliver it later, to which appellee consented. Hadley told him they would give him plenty of time if he would only let it stand there till later. On November 25th, Hadley wrote him it was possible they would be able to sell soon, and asked appellee if it would be convenient for him to commence to deliver. Appellee replied he wanted to commence right away.

Appellant, however, allowed the matter to drift along till February, when Harvey wrote appellee to ship seventy cords to Rockford as soon as he could, as the company wanted it there before the first of March. Appellee hauled about fifty cords to Davis Junction, and loaded three cars, and was loading and shipping the wood as fast as he could get cars. Before he began shipping Harvey had told him to throw out the small wood. When Harvey had unloaded the first car at Rockford he went to Davis Junction, and told appellee that there was no use of his loading that wood, for appellant would not accept it unless he would throw out the small wood. Harvey then returned to Rockford and sent appellee a written notice that the wood was not up to contract and he would not accept it, and that it was at Rockford subject to appellee's orders. The other two cars reached Rockford and appellant refused to receive them, and the railroad company unloaded the wood. On March 17, 1896, Harvey delivered formal written notice to appellee that by reason of his failure to deliver the wood at the time agreed upon, and of the quality agreed upon, appellant had refused to accept the wood and would hold him for the value thereof. Thereupon appellant brought this suit against appellee, and there was a verdict and judgment for the defendant, from which this appeal is prosecuted.

At the trial appellant claimed the contract called for wood merchantable at Rockford, and wood dealers at Rockford testified in its behalf that the car of wood they saw at Rockford contained numerous small sticks and some crooked ones, and was not merchantable at Rockford, and was not worth as much as merchantable wood, and was not worth $4.50 per cord. Appellee proved the contract in question was made on appellee's farm; that he was visited there by four agents of appellant while the provisions of the contract were under negotiation, and one of them was present on the farm when the contract was signed. About two hundred cords, including the wood in question, had been cut and piled on said farm a year and a half before, and it was standing on the farm when the contract was signed. Appellee

offered to prove that the final negotiations were completed a few rods from this wood; that the agent and he had a conversation at that time about this particular wood before the contract was signed, and that the one hundred cords to be delivered were part and parcel of the wood there present before the agent. The trial court refused to admit this testimony, and thereby prevented appellee from going directly into the defense that this was the wood appellant was to take under the contract. Thereupon appellee proved by numerous witnesses that this wood was good, dry, second-growth oak wood, and merchantable at Davis Junction.

Notwithstanding the exclusion of the direct inquiry, we are of opinion the facts and circumstances in evidence show appellant's agents made this contract with reference to one hundred cords of the wood appellee then had cut and piled on his farm. Two agents of appellant visited appellee at one time after this contract was made, and asked him to make them an offer for the wood, and one of them said "they" (evidently meaning appellant) "did not want the damned wood." Still later Borden came and brought a man with him that wanted to see the wood, and they went where this wood was. In a letter written by Hadley to appellee in November he speaks of this as "the wood purchased of you." In January, 1896, Hadley wrote appellee: "Hasn't Harvey done anything with that wood yet?" Still later Borden came to appellee and said he wanted to go and see the wood, and went and looked at this wood, and then tried to get appellee to sell thirty cords of it, saying he had sold seventy cords to the supervisors. Still later Harvey wrote him to have "the seventy cords of wood shipped," and inquired "what success have you selling the thirty cords?" At one of these interviews Harvey asked appellee if he could not use some of the small wood at home, and said he would like it if appellee would do so. At the same interview a neighbor was present and Harvey tried to sell him this wood, and called it good wood. On February 14, 1896, Harvey wrote appellee he would have to throw out the small wood, as the supervisors would not accept it with the small wood in. Most of this evidence was not contra-

dicted. From these and other circumstances proven it is clear to us that it was not the understanding of appellant's agent when he made this contract, or of its other agents who transacted this business, that appellee was from some unknown source to ship one hundred cords of wood, merchantable in Rockford, but that he was to ship one hundred cords of this wood then piled on his farm, and that said agents then knew part of it was small, and that no intention to object to small wood existed till appellant made a sale to the county and found the supervisors would not take small wood. We are of opinion these acts of the parties show what construction they placed upon the contract, and show that this was the wood which it was intended by the contract, appellant was to receive, and that the reference to Rockford was only to bind appellee to pay the expense of shipping to that point. It follows that the contract, as so construed by the acts of appellant's agents, did not mean, and was not by them supposed to mean, that appellee was to ship wood which would be merchantable in Rockford.

The evidence also shows that second-growth wood is small, and that this was dry oak wood, second growth, and good of its kind, and that it filled the description in the contract. The mention of $4.50 per cord in the contract can not possibly be construed to mean that when appellee delivered the wood in Rockford it was to be worth $4.50 per cord there. The items of payment enumerated in the contract before the wood was mentioned amounted to $1,550, and then one hundred cords of wood at $4.50 per cord was named and made up the $1,900, the price of the machinery. The $4.50 did not express the value of the wood per cord, but the price at which the appellant agreed to take it in payment for the machinery. It follows from what has been said, that in our opinion the court below committed no substantial error against appellant in its rulings upon the evidence and instructions here complained of. The verdict we regard as just, and the judgment thereon will be affirmed.